UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STUART A. GOLD, et al.,

    Plaintiff,

                                Case No. 07-14435
-vs-                               HON. AVERN COHN

CADENCE INNOVATION, LLC, et al.,

    Defendants.

_____/

## MEMORANDUM AND ORDER
## GRANTING J.P. MORGAN'S MOTION TO DISMISS
## LARRY J. WINGET'S INTERPLEADER CLAIM[1]

---

[1]This is a motion to dismiss under Rule 12(b)(6). While the parties attached several exhibits to their motion papers, and, at the Court's request, filed statements of material facts not in dispute, the Court treats the matter as a motion to dismiss. Regarding exhibits submitted to the Court, Rule 12(b) provides that if "matters outside the pleadings are present to and not excluded by the court, the motion shall be treated as one for summary judgment . . . as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." However, under certain circumstances, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings. This occurs when "a document is referred to in the complaint and is central to the plaintiff's claim ... ." Greenberg v. Life Ins. Co. of Virginia, 177 F.3d 507, 514 (6th Cir.1999) (internal citations omitted). In such event, "the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." Id.

       Here, most of the documents submitted as exhibits consist of documents central to Winget's claim, particularly public documents in the Venture v. Autoliv litigation. In any event, the Court has considered only those documents which fall within the permissible realm of consideration on a motion to dismiss.

1

I. Introduction

This is an interpleader action involving the proceeds of a judgment of $27,567,001.00, exclusive of costs and interest, for breach of contract in favor of Venture Industries Corporation (Venture) against Autoliv ASP, Inc. (Autoliv), in Case No. 99-75354.[2] Defendant, Larry J. Winget (Winget) (former CEO and sole stockholder of Venture), is a claimant. The grounds for his claim, which lie in the law of unjust enrichment, will be described below. Defendant, JP Morgan Chase Bank N.A. (JP Morgan) is an agent for a group of lenders, holds a lien on the judgment, and is also a claimant.

Before the Court is JP Morgan's motion to dismiss Winget's claim under Fed. R. Civ. P. 12(b)(6).[3] For the reasons which follow, the motion is GRANTED. Winget's claim is DISMISSED.

II. Background

A.

Prior to 1995, Venture manufactured air bag covers for Morton International, Inc. (Morton). Venture and Morton had a falling out which resulted in a lawsuit by Venture

---

[2] Although the dispute between Venture and Autoliv is set forth in several opinions by the Court and Court of Appeals for the Federal Circuit, a good description of the background of the case can be found in the Federal Circuit's decision in <u>Venture v. Autoliv</u>, 196 F. App'x 894 (Fed. Cir. Aug. 7, 2006).

[3] The background of the relationship, including litigation, between Winget and JP Morgan can be found in the following Sixth Circuit opinions: <u>JP Morgan Chase Bank, N.A. v. Winget</u>, 510 F.3d 577 (6th Cir. 2007), <u>Winget v. JP Morgan Chase Bank, N.A.</u>, __ F.3d __, 2008 WL 3268201 (6th Cir. Aug. 11, 2008).

2

against Morton in this district, Venture v. Morton, case no. 95-CV-71251.

The lawsuit was resolved by a Settlement Agreement And Mutual General Release (Settlement Agreement) signed December 31, 1995. The parties to the Settlement Agreement were Venture, Winget and Patent Holding Company (Patent Holding) and Morton. The Settlement Agreement recited that:

> The Subject Litigation [which was being settled] involves inter alia disputes regarding ownership of and right in certain intellectual property (including various patents) and allegations of breach of contract.

The Settlement Agreement provided for the signing of a Cross License Agreement and a Supply Agreement. Forms of the two (2) agreements were attached to the Settlement Agreement.

The parties to the Cross License Agreement were Venture, Patent Holding, Winget and Morton. The essence of the Cross License Agreement was the cross licensing of various patents owned by Venture [Schedule II] and by Morton [Schedule I] as well as technology. Disputes under the Cross License Agreement were to be arbitrated. Aside from being named as a party and referred to as part of the term "Venture" and a signatory, Winget is not otherwise mentioned in the Cross License Agreement. Any particular interest Winget had in the patents referenced in the Cross License Agreement or in the technology covered by the Cross License Agreement was not spelled out.

The parties to the Supply Agreement were Venture and Morton. The essence of the Supply Agreement was the obligation of Morton to purchase, and Venture to supply,

air bag covers. The particular air bag covers to be purchased by Morton were described. Under the Supply Agreement, Morton was also obligated to "give [Venture] the opportunity to quote on all of Morton's worldwide future air bag cover programs awarded to it by its customers during the term of the Supply Agreement."

B.

Autoliv subsequently acquired Morton's air bag business and obligations under the Supply Agreement and Cross License Agreement. Venture and Autoliv had a falling out. Venture sued Autoliv in this district for breach of the Cross License Agreement and breach of the Supply Agreement. <u>Venture v. Autoliv</u>, case no. 99-75354. Winget is named as a party plaintiff in the Second Amended Complaint. Aside from being named as a party plaintiff in the caption, there is no reference to Winget in the body of the Second Amended Complaint.

The Second Amended Complaint contained 12 counts as follows:

| | | |
|---|---|---|
| Count I | Breach of Supply Agreement - Autoliv ASP |
| Count II | Breach of Supply Agreement - Autoliv, Inc. |
| Count III | Breach of Cross License Agreement - Autoliv ASP |
| Count IV | Breach of Cross License Agreement - Autoliv, Inc. |
| Count V | Abandonment of Supply Agreement, Cross License Agreement and Settlement Agreement |
| Count VI | Correction of Inventorship |

| | | |
|---|---|---|
| Count VII | Declaratory Judgment of Patent Unenforceability Against Venture |
| Count VIII | Declaratory Judgment of Equitable License |
| Count IX | Patent Infringement |
| Count X | Misappropriation of Trade Secrets |
| Count XI | Unjust Enrichment - Autoliv ASP |
| Count XII | Unjust Enrichment - Autoliv, Inc. |

Of particular note is that Count IX, Patent Infringement, lists some 22 patents and states

> 159. VENTURE is the owner by assignment of the VENTURE patents, including the right to recover for past infringement.

The First Amended Complaint, Count Eight – Declaratory Judgment of Patent Infringement – made the same allegations and stated that

> 119. Plaintiff Patent Holding Company is the owner by assignment of the above patents, including the right to recover for past infringement.[4]

Early in the course of the case, the counts relating to the claims regarding patent rights and technology rights were stayed pending arbitration of these claims.

---

[4]On July 7, 1997, Winget and Patent Holding licensed Venture in a License Agreement As To Patents "to incorporate into the parts that [Venture] manufactured and to otherwise produce the patents owned by [Winget and Patent Holding]."

For strategic litigation reasons, Venture made a persistent effort to conflate the three (3) agreements (the Settlement Agreement, the Cross License Agreement, and the Supply Agreement) by use of the term "contract." The Court rejected this effort stating:

> The Settlement Agreement has been fully performed. It is <u>functus officio</u>. Nothing in it governs the relationship of the parties.

Memorandum and Order of July 1, 2003 in case no. 99-75354, p. 5.

The breach of contract claim of Venture went to trial. Venture was successful. The jury found that Autoliv had breached the Supply Agreement and awarded Venture $27,567,001.00 in damages.

Importantly the jury was instructed as follows

> If you decide for Venture on its claim for breach of contract, you must fix the amount of money which will reasonably compensate Venture for all loss naturally arising from the breach. In calculating Venture's damages, you should determine that sum of money that will put Venture in as good a position as it would have been in if both Venture and Autoliv had performed all of their obligations under the contract

As part of the verdict, the jury answered "yes" to the following questions:

1. Do you find that the defendant Autoliv ASP, Inc. breached the Supply Agreement?

2. Do you find that the plaintiff Venture Industries Corporation suffered damages as a proximate result of defendant Autoliv ASP, Inc.'s breach?

and was instructed

>    3. If you answered "YES" to Questions 1 and 2, identify the air bag cover programs on which defendant particularly breached the Supply Agreement by marking the box in the column identified "Breach?" in Parts A and B. For those programs where you have indicated a particular breach by defendant, state the amount of damages suffered by plaintiffs on that cover program.

The jury awarded Venture damages on some 33 discrete air bag cover programs that Venture either quoted to Autoliv or was denied the opportunity to quote to Autoliv. The $27,576,001.00 represents lost profits to Venture because of Autoliv's breach of the Supply Agreement.

Regarding the arbitration proceedings, a Final Award was entered dismissing all claims with prejudice except the claim of Winget. Winget's claim was dismissed without prejudice with the notation that:

> Mr. Winget is free to bring any claims he may have against any of the Respondents and/or the other Claimants and/or his counsel, subject to their defenses, in one or more other proceedings, but not through this one.

C.

In 1999, Venture obtained a resolving line of credit and term loan from a group of lenders. As security, Venture gave the lenders through JP Morgan as their agent a perfected security interest in, among other things, Venture's general intangibles, which were defined in the UCC Financing Statement filed on behalf of the agent as, in part "all accounts receivable, contract rights, deposit accounts and all monies and claims for

money due or to become due to [Venture]."

On October 22, 2001, in order to secure an amendment to the credit agreement described above, Winget, Venture's sole stockholder, personally guaranteed the loan.

On March 22, 2002, Venture's interest in the Autoliv case was included as part of the collateral pledged to JP Morgan to support an amendment to the loan agreement.

D.

On March 28, 2003, Venture filed a voluntary Chapter 11 bankruptcy proceeding. Substantially all of Venture's assets were sold as part of the bankruptcy proceedings. Venture continues to owe the lenders for which JP Morgan is agent more than $325,000,000.00.

III. Winget's Claim

The essence of Winget's claim to a portion of the proceeds of the judgment in the Venture v. Autoliv litigation is that the Judgment Proceeds as he describes them, $27,567,001.00, "could not have been realized without the benefit conferred by Winget in the context of the Cross License and Settlement Agreement," and that it would be inequitable to allow Venture to retain all of the Judgment Proceeds. "Equity demands that Winget receive compensation in the form of a fair apportionment of the Judgment Proceeds." To put it somewhat differently, the Cross License Agreement "enabled the Supply Agreement. . . the performance of the Supply Agreement by the named contract parties, Morton and Venture were wholly dependent on the license grant and covenant given by Winget and PH [Patent Holding Company] on the Cross License."

8

IV. JP Morgan's Motion

JP Morgan's motion to dismiss Winget's claim is predicated on four separate grounds:

- Winget fails to state a claim for unjust enrichment by failing to plead a benefit conferred, a retention of benefits and an inequity as a result of any benefit conferred.

- Winget pleads an express, integrated contract which governs the subject matter of his claim for unjust enrichment.

- Winget has contracted to provide the proceeds of the judgment to JP Morgan Chase as Agent as part of an express integrated contract.

- A shareholder equitable claim may not be used to circumvent the distribution plan established by the Bankruptcy Code.

V. Motion to Dismiss

A motion under Fed. R. Civ. P. 12(b)(6) motion seeks dismissal for a plaintiff's failure to state a claim upon which relief can be granted. The Sixth Circuit has recently summarized the post- Twombly[5] legal standard for evaluating a motion to dismiss under Rule 12(b)(6):

> "The Supreme Court has recently clarified the pleading standard necessary to survive a Rule 12(b)(6) motion." Factual allegations contained in a complaint must 'raise a right to relief above the speculative level.' Twombly does not "require heightened fact pleading of specifics,

---

[5]Bell Atl. Corp. v. Twombly, --- U.S. ----, 1287 S.Ct. 1955 (2007).

9

> but only enough facts to state a claim to relief that is plausible on its face."
> "In reviewing a motion to dismiss we can construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."

Bassett v. The Nat'l Collegiate Athletic Ass'n, No. 06-5795, 2008 WL 2329755, *2 (6th Cir. June 9, 2008) (internal citations omitted).

## VI. Legal Framework

### A.

Two overarching rules of law must be first recognized, both rooted in bankruptcy law. The first is expressed in Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355 (1985): ". . . bankruptcy causes fundamental changes in the nature of corporate relationships. One of the painful facts of bankruptcy is that the interests of shareholders become subordinated to the interests of creditors." The second is stated in In Re Dow Corning Corp., 456 F.3d 668 (6th Cir. 2006). In Dow Corning, the Sixth Circuit said:

> [w]hether a company is solvent or insolvent in either the equity or the bankruptcy sense, 'any arrangement of the parties by which the subordinate rights and interests of the stockholders are attempted to be secured at the expense of the prior rights' of creditors 'comes within judicial denunciation.'

Id. at 678 (citing Consolidated Rock Prods. Co. v. Du Bois, 312 U.S. 510, 527, 61 S.Ct. 675, 85 L.Ed. 982 (1941), citing Louisville Trust Co. v. Louisville, New Albany & Chicago Ry. Co., 174 U.S. 674, 684, 19 S.Ct. 827, 43 L.Ed. 1130 (1899)).

### B.

Winget's claim is bottomed on the law of unjust enrichment. What is required to make out a case of unjust enrichment is well established in Michigan case law,[6] set forth below.

> To sustain a claim for unjust enrichment, plaintiff needed to show that defendants received a benefit from plaintiff and that an inequity resulted to plaintiff as a consequence of defendants' retention of that benefit. In such a situation, a contract will be implied by law to prevent unjust enrichment. But a contract cannot be implied when an express contract already addresses the pertinent subject matter.

Liggett Restaurant Group, Inc. v. City of Pontiac, 260 Mich. App. 127, 137 (2003).

> Although there was evidence that plaintiff benefitted from the loan proceeds acquired by Imhoff, benefit alone is not the test for a court of equity to impose a quasi or constructive contract upon which recovery may be had. Michigan Educational Employees Mut Ins Co v. Morris, 460 Mich. 180, 198; 596 N.W.2d 142 (1999); Belle Isle Grill Corp v. Detroit, 256 Mich. App. 463, 478; 666 N.W.2d 271 (2003). An inequity must result from a party's receipt of a benefit from another party. Id. "Because this doctrine vitiates normal contract principles, the courts 'employ the fiction with caution, and will never permit it in cases where contracts, implied in fact, must be established, or substitute one promisor or debtor for another.'" Kammer Asphalt Paving Co., Inc. v. East China Twp. Schools, 443 Mich. 176, 186, 504 N.W.2d 635 (1993) (citation omitted).

---

[6]An early case recognizing a claim for unjust enrichment in Michigan is Beardslee v. Horton, 3 Mich. 560 (1855) where the Michigan Supreme Court had this to say:
    An action for money had and received is an equitable action, and can be maintained in all cases for money which in equity and good conscience belongs to the plaintiff.
    . . .
    It will be found upon examination, that it is not essential to the maintenance of this action, that there should be any express promise to pay, for the law implies a promise where justice imposes a duty.

11

Mounts v. Country Wide Home Loans, Inc., 2004 WL 2624855 *6 (Mich. Ct. App. Nov. 18, 2004).

> When a party is unjustly enriched, the law generally requires the benefitted party to provide restitution for the benefit received. Courts often employ the legal fiction of a contract implied in law or <u>quasi</u> contract to justify payment where no contract exists. <u>Detroit v. Highland Park</u>, 326 Mich. 78, 100, 39 N.W.2d 325 (1949). To recover under this theory the plaintiff must show that the defendant received a benefit from the plaintiff and that it would be unjust for the defendant to retain that benefit. <u>Buell v. Orion State Bank</u>, 327 Mich. 43, 56, 41 N.W.2d 472 (1950). We must be cautious in applying this doctrine, however, because the mere fact that a benefit has been conveyed does not necessarily indicate that it is unjust for the party to retain that benefit.

> Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it. The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor." <u>Restatement Restitution</u>, §1, comment c, p. 13.

<u>Karmine Asphalt Paving Co., et al. v. East China Township Schools</u>, 443 Mich. 176, 197-98 (1993) (Cavanagh, J., concurring).

## VI. Analysis

### A.

The motion implicates an examination of the question of what is unfair or unjust

in determining whether one is entitled to compensation.[7] Fairness and unjustness in the abstract are decidedly different from actionable unfairness or unjust, the latter being the subject of a claim for unjust enrichment. While Winget apparently believes he has been unfairly or unjustly deprived of a share of the jury's verdict, neither the facts nor the law support his belief. Winget's assertion that because he contributed his intellectual property to the Cross License Agreement which "enabled" the Supply Agreement, he is entitled to a portion of the $27,567,001.00 paid by Autoliv to Venture for its breach of the Supply Agreement because otherwise Venture would be unjustly enriched at his expense, plainly put, lacks merit. This is so because:

- Winget did not contribute his intellectual property to the Cross License Agreement. The patents which were the subject of the Cross License Agreement from Venture's standpoint belonged to Venture.

- Winget did not "enable" the Supply Agreement. The Supply Agreement was entered into by Morton as part of the settlement of a dispute with Venture. It was a stand-alone agreement.

- The $27,567,001.00 paid by Autoliv to Venture in satisfaction of the judgment represented lost profits to Venture because of Autoliv's breach of contract. Had Autoliv performed its side of the Supply Agreement, Venture would have profited by the $27,567,001.00. Winget had no personal interest in or right to the profits Venture made from the sale of air bag covers.

---

[7]Also implicated is the ancient concept <u>ex aequo et bono</u>, which holds that disputes should be decided according to that which is "fair" and in "good conscience."

13

- To the extent that Venture was "enriched" by the $27,567,001.00, it is not unjust for Venture to keep the full amount.

- Winget as the sole shareholder of Venture was in fact "enriched" as a result of Venture's success in collecting the profits it lost by Autoliv's breach of the Supply Agreement.

- To the extent Winget had an interest in the patents which are the subject matter of the Cross License Agreement, he still has the right to pursue Autoliv if there is any obligation on the part of Autoliv to compensate him for his interest.

- Winget cannot claim unjust enrichment in the circumstance here because his rights, the rights of Patent Holding and of Venture, are spelled out by an express contract.

- Winget's right to any of the assets of Venture are that of a shareholder only, and in the circumstances of the bankruptcy of Venture are subordinate to its creditors.

- To give any credence to Winget's claims would effectively say that Winget had a right to a share of the profits individually on Venture's business dealings with Autoliv, i.e., on the profits Venture made in manufacturing air bag covers for and selling them to Autoliv. Clearly such was not the case. Venture's success in suing Autoliv for breach of contract meant only that Venture received what it was entitled to under the Supply Agreement, an agreement in which Winget had no personal interest.

B.

The law of unjust enrichment, set forth above, on which Winget relies to justify

14

his claim to a portion of the proceeds of the judgment Venture obtained against Autoliv is generally held to have originated in the decision by Lord Mansfield in Moses v. MacFerlan, 2 Burr. 1005 (1760). There Lord Mansfield said

> That no assumpsit lies, except upon an express or implied contract: but here it is impossible to presume any contract to refund money, which the defendant recovered by an adverse suit.
>
> Answer: If the defendant be under an obligation, from the ties of natural justice, to refund; the law implies a debt, and gives this action, founded in the equity of the plaintiff's case, as it were upon a contract ("quasi ex contractu," as the Roman law expresses it).

Id. at 1009

and concluded by saying

> In one word, the gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money.

Id. at 1013.

Here, "ties of natural justice and equity" do not require Venture to share the $27,567,001.00 with Winget. He simply has no actionable claim to it. The jury verdict represents profits lost by Venture because of Autoliv's breach, and as such, Venture is entitled to every penny of it.

SO ORDERED.

Dated: August 22, 2008                s/Avern Cohn

**07-14435 Gold, et al v. Cadence Innovation, LLC, et al**

AVERN COHN

UNITED STATES DISTRICT JUDGE

Unjust enrichment. The retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected. <u>Black's Law Dictionary</u> 1536 (7th ed. 1999)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 22, 2008, by electronic and/or ordinary mail.

           s/Julie Owens
           Case Manager, (313) 234-5160